UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

MICHAEL KNOX,

      Petitioner,

v.                                                    Case No. 4:24cv166-AW-HTC

RICKY DIXON,
Secretary of the Florida
Department of Corrections,

      Respondent.

_____/

<u>REPORT AND RECOMMENDATION</u>

      Michael Knox, proceeding *pro se*, filed a petition under 28 U.S.C. § 2254 challenging his conviction in Leon County Circuit Court Case No. 2018 CF 763. Doc. 1.  After considering the petition, the record, the Secretary's response, Doc. 9, and Knox's reply, Doc. 11, the undersigned finds the petition should be DENIED without an evidentiary hearing.

## I.    Background[1]

      On February 24, 2018, multiple guns were stolen from Ad-Tek, a gun store in Tallahassee, Florida.  Doc. 9-3 at 5-7.  Officer Michael Petroczky of the Tallahassee

---

[1] All of Knox's grounds for habeas relief are related to a motion to suppress he filed.  Accordingly, the facts regarding Knox's conviction are derived from Officer Michael Petroczky's testimony at the hearing on the motion to suppress.

Police Department subsequently received an intelligence bulletin that included a photograph of a vehicle potentially connected to the burglary. *Id.* Based on the photograph, Officer Petroczky identified the vehicle as a white 90's model Toyota Corolla with tinted windows, aftermarket rims, damage near the passenger side mirror, and a black molding strip along the mid-line of the passenger side. *Id.* at 6-7.

On February 28, 2018, police dispatch received a call about a black male at the corner of Gamble and Disston Streets selling firearms from a white vehicle, possibly a Honda, that the caller thought were stolen. *Id.* at 7-9, 21, 25. The caller indicated the male: (1) was approximately 5'10" and 180 lbs; (2) was wearing a black tank top and jeans; (3) had a short fade haircut that was grown out; and (4) went by the name "Meat" and his first name was possibly "Mike." *Id.* at 9-10. The caller contacted dispatch a second time and provided the license plate number of the white vehicle. *Id.* at 9-10. The caller wished to remain anonymous but gave their phone number to dispatch in case they needed to be contacted. *Id.* at 9. Police ran the license plate number provided by the caller and learned it was for a 1993 white Toyota Corolla registered to the petitioner, Michael Knox. *Id.* at 10. Officer Petroczky also learned Knox had a criminal history that involved either guns or violence. *Id.* at 30.

Less than 10 minutes after the second call, Officer Petroczky arrived at the location given by the caller and drove his unmarked car past the white vehicle several times over the course of about 30 minutes. *Id.* at 11, 14. Officer Petroczky recognized the vehicle as the same one he saw in the intelligence bulletin, as it had the same rims, molding, and tint. *Id.* at 11-12. Officer Petroczky also observed an individual, later identified as Knox, who matched the physical description provided by the caller. *Id.* at 13, 19-20. Officer Petroczky saw Knox holding something at chest level and showing it to another individual; Petroczky could not see what was in Knox's hand because the Corolla obstructed his view. *Id.* at 13. Based on his training and nearly 13 years of experience in law enforcement, Officer Petroczky believed "there was something illegal about their actions" because "the mannerisms that they were using or displaying suggested that what they were doing was secretive, guarded, hidden behind the car and hidden close to the chest." *Id.* at 12-14. And because the individual showed "significant excitement" over what Knox was showing him, Officer Petroczky did not think it was "a nonchalant, hand-to-hand transaction" like he had witnessed "with most street level narcotics deals"; instead, based on all the information he had, Officer Petroczky suspected Knox was showing the individual a firearm. *Id.* at 14.

Officer Petroczky, along with other officers in unmarked vehicles, subsequently entered the parking lot where the Corolla was located. *Id.* at 15. The

officers exited their vehicles with their guns drawn and pointed at the suspects, who were ordered to get down. *Id.* at 15, 26. Knox and the other men put their hands up and laid on the ground. *Id.* at 15. Petroczky secured Knox's hands behind his back, patted him down, and found a pistol in a holster in the front of his waistband. *Id.* at 17-18, 26. Officers also searched a duffel bag located on the trunk of the Corolla and discovered multiple firearms, the majority of which were confirmed as being stolen from Ad-Tek. *Id.* at 18-19, 28, 31.

On March 9, 2018, Knox was charged with four offenses: (1) burglary of a structure while armed with a firearm (Count 1); (2) possession of a firearm by a convicted felon (Count 2); (3) grand theft of a firearm (Count 3); and (4) possession of a firearm by a convicted felon (Count 4). Doc. 9-1 at 2-3. Counts 1 through 3 related to the burglary of Ad-Tek on February 24, while Count 4 related to the firearms found on February 28.

On April 12, 2018, Knox moved to suppress the firearms discovered during the February 28 encounter. Doc. 9-2. The circuit court held a hearing on the motion on June 7, 2018, Doc. 9-3, and denied it, Doc. 9-4. On August 22, 2018, the court severed Counts 1 through 3 from Count 4 at Knox's request. Doc. 9-5; Doc. 9-6. On January 29, 2019, Knox proceeded to trial on Count 4, where he represented himself, and a jury found him guilty of possessing the firearm found in his waistband. Doc. 9-7. On February 5, 2019, the court sentenced Knox to 12 years of

imprisonment with a 3-year mandatory minimum.  Doc. 9-8.  The State later declined to prosecute Knox on Counts 1 through 3.

Knox filed a direct appeal of his conviction and sentence to the First District Court of Appeal ("First DCA"), arguing the circuit court erred by denying his motion to suppress.  Doc. 9-9; *see also Knox v. State*, 296 So. 3d 989 (First DCA 2020).  The First DCA affirmed with a written opinion, holding the circuit court properly denied the motion to suppress.  *Knox*, 296 So. 3d at 996.

Knox sought discretionary review from the Supreme Court of Florida, which declined to accept jurisdiction on October 21, 2020.  Doc. 9-13; *see also Knox v. State*, 2020 WL 6158132 (Fla. 2020).  Because Knox did not seek review in the U.S. Supreme Court, his conviction became final 90 days later, on January 19, 2021.  *See Bond v. Moore*, 309 F.3d 770, 773-74 (11th Cir. 2002) (holding a state prisoner's conviction becomes final when the U.S. Supreme Court denies certiorari, issues a decision on the merits, or when the 90-day period to file a petition for certiorari expires).  However, Knox's time to file the instant petition under the Antiterrorism and Effective Death Penalty Act ("AEDPA")[2] did not start on that date because he had already filed a Rule 3.800 motion to correct illegal sentence on December 14,

---

[2] Under the AEDPA, a petition for habeas relief must be filed within one year of certain trigger dates—the pertinent one here being one year from final judgment.  28 U.S.C. § 2244(d)(1)(A).  Properly filed post-conviction motions, such as motions under Florida Rules of Criminal Procedure 3.800 and 3.850, will toll the limitations period until the motion is fully resolved.  *Id.* at § 2244(d)(2).

2020.  Doc. 9-14.  Knox's Rule 3.800 motion, along with several other postconviction motions he filed, tolled the statute of limitations period, so less than 60 days ran off the one-year AEDPA clock before Knox filed his § 2254 petition on April 4, 2024.  Doc. 1.  Thus, the undersigned agrees with the Secretary that the petition is timely.

In the petition, Knox presents five grounds for habeas relief: (1) the circuit court erred by denying his motion to suppress; (2) trial counsel provided ineffective assistance by failing to sever Counts 1 through 3 from Count 4 before the hearing on the motion to suppress; (3) trial counsel provided ineffective assistance by failing to present legal authority (statutes, caselaw, procedural rules) during the motion to suppress hearing; (4) appellate counsel provided ineffective assistance by failing to move for a rehearing after the First DCA affirmed his conviction on direct appeal; and (5) appellate counsel provided ineffective assistance by failing to challenge "the nature of the initial encounter" between Knox and police.  Doc. 1.

## II.   Legal Standards

Under the AEDPA, which governs a state prisoner's petition for habeas corpus relief, relief may only be granted on a claim adjudicated on the merits in state court if the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and difficult to meet. *White v. Woodall*, 572 U.S. 415, 419 (2014). "Clearly established federal law" consists of the governing legal principles set forth in the decisions of the U.S. Supreme Court when the state court issued its decision. *Id.* A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams v. Taylor*, 529 U.S. 362, 406 (2000)). "A state court's determination that a claim lacks merit precludes federal

habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

Four of Knox's grounds for relief are premised on ineffective assistance of counsel. An ineffective assistance of counsel claim requires showing: (1) counsel's representation fell below an objective standard of reasonableness; and (2) prejudice resulted, *i.e.*, that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential. *Id.* at 689-90. The defendant bears the burden of proving that counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. *Id.* at 688-89.

*Strickland*'s prejudice prong requires a petitioner to show more than simply that counsel's conduct might have had "some conceivable effect on the outcome of the proceeding." *Id.* at 693. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Bare allegations the petitioner was prejudiced by counsel's performance are not enough. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).

## III.   Discussion

For the reasons discussed below, the undersigned finds Knox is not entitled to relief on any of the grounds presented in the petition.

### A.   Ground One

In Ground One, Knox argues the circuit court erred by denying his motion to suppress.  Doc. 1 at 9-10.  However, in *Stone v. Powell*, the Supreme Court held, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  428 U.S. 465, 494 (1976) (footnotes omitted).  "'[F]ull and fair consideration' in the context of the Fourth Amendment includes 'at least one evidentiary hearing in a trial court and the availability of meaningful appellate review when there are facts in dispute, and full consideration by an appellate court when the facts are not in dispute.'"  *Bradley v. Nagle*, 212 F.3d 559, 565 (11th Cir. 2000) (quoting *Caver v. Alabama*, 577 F.2d 1188, 1191 (5th Cir. 1978)).

Although not yet discussed by the Eleventh Circuit, some federal courts have concluded a Fourth Amendment claim may be subject to federal habeas review if the state provides a corrective mechanism to address Fourth Amendment violations, "but the defendant was precluded from using that mechanism because of an

unconscionable breakdown in the underlying process."[3]  *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992).   These courts define an unconscionable breakdown as encompassing "substantial failures in the process, such as the ambushing of the defendant by unanticipated and unforeseeable application of a state court procedural rule at a time when it can no longer be complied with, or still more extreme circumstances, including the bribery of a judge, use of torture, or use of perjured testimony."  *Poole v. New York*, 2009 WL 3009356, at *6 (S.D.N.Y. Sept. 21, 2009) (cleaned up).  As the same courts recognize, however, "a mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process."  *Capellan*, 975 F.2d at 72.

Here, Knox asserts *Stone* does not apply to Ground One; he contends he was not afforded a full and fair opportunity to litigate his Fourth Amendment claim because there was an "unconscionable breakdown" in the process the state courts provided to litigate the claim.  Doc. 11 at 4.  Specifically, he alleges the state courts never addressed whether Officer Petroczky's detention of him constituted an arrest requiring probable cause, either because appellate counsel failed to raise it or the First DCA simply overlooked the argument.  Doc. 11 at 5-6.

---

[3] *See Davis v. Jones*, 441 F.Supp.2d 1138, 1217 (M.D. Ala. 2006) ("A federal habeas petitioner, however, in some instances may escape the rule articulated in *Stone* … on the basis of a denied opportunity, if he or she is prevented from litigating a Fourth Amendment claim 'by reason of unconscionable breakdown in the underlying process.'") (citation omitted).

The state court record, however, refutes Knox's assertion that he was not afforded a full and fair opportunity to litigate his Fourth Amendment claim. First, Knox invoked the Fourth Amendment in the motion to suppress and argued the police illegally arrested him without probable cause when they detained him at gunpoint. Doc. 9-2; Doc. 9-3 at 32-33. After holding an evidentiary hearing on the motion, which included testimony from Officer Petroczky, the circuit court denied the motion, finding: (1) the police only needed—and had—reasonable suspicion to detain Knox at gunpoint and pat him down; and (2) alternatively, the police had probable cause to arrest Knox. Doc. 9-3 at 39-40 ("I disagree with the Defense contention that the detention has to involve probable cause. There is a myriad of cases that find that detention at gun point can occur, based on reasonable suspicion."); Doc. 9-4.

Second, Knox raised a Fourth Amendment claim in his direct appeal to the First DCA. Doc. 9-9; *see also Knox v. State*, 296 So. 3d 989 (First DCA 2020). Although appellate counsel may have focused more on arguing that Officer Petroczky lacked reasonable suspicion for an investigatory stop, she also argued there was no probable cause for an arrest. Doc. 9-9. Indeed, the initial appellate brief included a reference to *Florida v. Royer*, 460 U.S. 491 (1983). *See* Doc. 9-9 at 18 ("In Royer, the court noted detentions could be investigative yet violative of the Fourth Amendment absent probable cause and held that police may not 'seek to

verify their suspicions by means that approach the conditions of arrest.'"). Regardless, even if counsel failed to make clear that she was also arguing Knox's initial detention was a de facto arrest, *Stone* would still bar federal habeas review because Knox *could have* made the argument to the First DCA.[4]  *See Davis*, 441 F. Supp. 2d at 1217 ("Courts consistently have concluded that a petitioner who, for whatever reason, chooses not to raise a Fourth Amendment issue on appeal has not been deprived of a full and fair opportunity to litigate the claim.").

Finally, the undersigned disagrees with Knox that the First DCA overlooked his de facto arrest claim.  To the contrary, it appears the court considered it and then summarily disregarded it as having no merit.  As the First DCA reasonably stated:

> "On appeal, [Knox] does not dispute that the police conducted an investigatory stop when they initially detained him at gunpoint.  Indeed, as we have explained, an investigatory stop is not automatically converted into an arrest when an officer draws a weapon and directs the suspect to lie on the ground; instead, the police are entitled to take such action as is reasonable under the circumstances. … As such, the question before us is whether the police had reasonable suspicion to stop [Knox]."

*Knox*, 296 So. 3d at 993-94 (quotations and citations omitted).  Moreover, even assuming arguendo that Knox is right and *Stone* does not apply because the First DCA overlooked counsel's argument that Knox's detention amounted to an arrest,

---

[4] The State's answer brief asserted Knox's "initial contact with officers did not amount to a 'de facto' arrest simply because [he] was approached at gunpoint" and cited case law to support its position.  Doc. 9-10 at 9, 19-20.  Knox's reply brief did not contest this assertion and instead reiterated the claim that police lacked reasonable suspicion to detain Knox.  Doc. 9-11.

*see Agee v. White*, 809 F.2d 1487, 1490 (11th Cir. 1987) (finding *Stone* did not preclude consideration of Fourth Amendment claim in habeas petition when defendant raised the claim both at trial and on direct appeal but state appellate court "ignored this contention in its opinion"), Knox is not entitled to relief because the claim has no merit.  As discussed in Part III.C, *infra*, Knox has not identified any U.S. Supreme Court cases that indicate a detention like his constitutes an arrest.  Accordingly, he cannot show the First DCA's determination that his detention was consistent with the Fourth Amendment was contrary to, or involved an unreasonable application of, clearly established federal law.

Based on the foregoing, Knox cannot establish he was denied a full and fair opportunity to litigate his Fourth Amendment claim.  Knox presented his "de facto arrest" claim to the circuit court and either did or could have presented it to the First DCA.  *See Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980) ("[I]t is the existence of state processes allowing an opportunity for full and fair litigation of fourth amendment claims, rather than a defendant's use of those processes, that serves the policies underlying the exclusionary rule and bars federal habeas corpus consideration of claims under *Stone v. Powell*.") (citing *Caver*, 577 F.2d at 1192-93).  *Stone*, therefore, precludes Knox from pursuing habeas relief based on the claim that his motion to suppress was wrongly decided.  *See Bradley*, 212 F.3d at 565 (rejecting petitioner's argument "that the procedural bar of *Stone* should not apply

… because the Alabama courts applied the law incorrectly in evaluating his claim" and finding he was not "denied a full and fair opportunity to litigate his Fourth Amendment claims, even were we to disagree with the state courts' analysis or conclusion").

### B.    Ground Two

In Ground Two, Knox argues trial counsel provided ineffective assistance by failing to have Count 4 severed from Counts 1 through 3 before the hearing on the motion to suppress.  Doc. 1 at 12.  Knox claims severance would have prevented the State from using "prejudicial allegations" that he was a suspect in the Ad-Tek burglary at the hearing.  Doc. 11 at 8-10.

Knox raised Ground Two in his amended Rule 3.850 motion for postconviction relief.  Doc. 9-19 at 11-13.  The circuit court denied relief, finding "severance of the charges would have no bearing on the outcome of the Motion to Suppress because this Court would be aware of the other charges upon the filing of the information in this case, where these offenses were charged."[5]  Doc. 9-20 at 4.

Knox has not shown the state court's denial of relief was contrary to, or involved an unreasonable application of, clearly established federal law.  As the

---

[5] Because the First DCA per curiam affirmed the denial of Knox's amended Rule 3.850 motion without a written opinion, Doc. 9-22, the Court will "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale, presume that the unexplained decision adopted the same reasoning, and apply AEDPA deference to that decision. *See Wilson v. Sellers*, 584 U.S. 122, 125 (2018).  Here, that last decision comes from the circuit court's order denying the amended Rule 3.580 motion.  Doc. 9-20.

circuit court concluded, regardless of whether the claims were severed, the circuit court would know about the other charges. Indeed, the court would have heard about the Ad-Tek burglary and Knox's possible involvement because Officer Petroczky's identification of Knox's Corolla as the vehicle from the intelligence bulletin was part of the "totality of circumstances" Petroczky offered to justify stopping Knox.[6] *See United States v. Irick*, 315 F. App'x 111, 112 (11th Cir. 2008) ("Reasonable suspicion is measured under the totality of the circumstances and in the light of the detaining officer's knowledge.") (citation omitted); *United States v. Gonzalez-Zea*, 995 F.3d 1297, 1302 (11th Cir. 2021) ("Whether a search or seizure is reasonable 'depends upon all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself.'") (quoting *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985)).

---

[6] Furthermore, "the rules of evidence normally applicable in criminal trials do not operate with full force at hearings before the judge to determine the admissibility of evidence." *United States v. Matlock*, 415 U.S. 164, 172-73 (1974). "[T]his principle is based on the assumption that more evidence should be included in a pretrial hearing because the judge, unlike a jury, can give the evidence 'such weight as his judgment and experience counsel.'" *United States v. Conner*, 699 F.3d 1225, 1227-28 (10th Cir. 2012) (quoting *Matlock*, 415 U.S. at 175). Thus, evidence that may be inadmissible at trial can be considered by a judge at a suppression hearing. *See United States v. Deases*, 918 F.2d 118, 119-20 (10th Cir. 1990) (rejecting argument that district court erred by allowing inadmissible and prejudicial testimony to be introduced into evidence at hearing on motion to suppress and noting "it is difficult to imagine a situation where, in a hearing on a motion to suppress, the admission of inadmissible evidence would justify a reversal on appeal").

Knox, therefore, cannot show that counsel's failure to move to sever the counts before the suppression hearing was ineffective or prejudicial to him. Knox is not entitled to relief on Ground Two.

### C.    Grounds Three, Four, and Five

In Grounds Three, Four, and Five, Knox claims his trial or appellate counsel's presentation of the argument that Officer Petroczky's detention of Knox amounted to an arrest was ineffective. Specifically, in Ground Three, Knox claims trial counsel was ineffective for failing to present "case law, statute law, or procedural rules" during the suppression hearing. Doc. 1 at 15. In Ground Four, Knox claims appellate counsel provided ineffective assistance by failing to move for a rehearing after the First DCA affirmed his conviction on direct appeal because the First DCA overlooked his argument that his detention constituted an arrest without probable cause. Doc. 11 at 13-15. And, in Ground Five, Knox asserts appellate counsel provided ineffective assistance by failing to challenge "the nature of the initial encounter" between Knox and Officer Petroczky. Doc. 1 at 22. To succeed on these claims, Knox must not only show that counsel was ineffective, but he must also "prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

Knox cannot make this showing because his Fourth Amendment claim has no merit. He has not identified any U.S. Supreme Court cases which hold a detention like his constitutes an arrest requiring probable cause. The two Supreme Court cases he faults trial counsel for not citing at the suppression hearing—*Dunaway v. New York*, 442 U.S. 200 (1979) and *Florida v. Royer*, 460 U.S. 491 (1983)—are distinguishable from Knox's case because both involved suspects who were moved to a different location by police.[7]  *See Marshall v. Sec'y, Fla. Dep't of Corr.*, 828 F.3d 1277, 1286 (11th Cir. 2016) (*Dunaway* and *Royer* "each involved the transportation of the defendant beyond the initial site of the stop without probable cause"); *see also United States v. Sharpe*, 470 U.S. 675, 684 n.4 (1985) (describing the "pertinent facts relied on by the Court in *Dunaway*" as "(1) the defendant was taken from a private dwelling; (2) he was transported unwillingly to the police station; and (3) he there was subjected to custodial interrogation resulting in a confession"); *id.* at 684 (noting in *Royer* the Court held the defendant's detention constituted an arrest when "government agents stopped the defendant in an airport, seized his luggage, and took him to a small room used for questioning, where a

---

[7] Knox also blames appellate counsel for not referencing *United States v. Delgadillo-Velasquez*, 856 F.2d 1292 (9th Cir. 1988) in his direct appeal. However, because that case is from the Ninth Circuit, it is not binding on the First DCA, and appellate counsel's performance cannot be deemed deficient for failing to cite it. *See Gregory v. United States*, 109 F. Supp. 2d 441, 458 (E.D. Va. 2000) ("an attorney is not constitutionally deficient for failing to research the law of other circuits"). Furthermore, the case is distinguishable from Knox's case because in *Delgadillo-Velasquez* the police told the defendant he was under arrest and read him his *Miranda* rights. 856 F.2d at 1295.

search of the luggage revealed narcotics"). Trial counsel's failure to cite cases involving materially different circumstances to those at issue in Knox's case is neither deficient nor prejudicial.

Furthermore, the Supreme Court has held that during an investigatory stop, "when an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, the officer may conduct a patdown search to determine whether the person is in fact carrying a weapon." *Minnesota v. Dickerson*, 580 U.S. 366, 373 (1993) (cleaned up and citation omitted). And the Eleventh Circuit has held "an investigatory stop does not necessarily ripen into an arrest because an officer draws his weapon, handcuffs a suspect, orders a suspect to lie face down on the ground, or secures a suspect in the back of a patrol car." *United States v. Acosta*, 363 F.3d 1141, 1147-48 (11th Cir. 2004) (citations omitted) (holding "stop did not mature into *de facto* arrest" even though officers drew their guns as suspect exited his car and frisked him for weapons); *see also Carroll v. State*, 636 So. 2d 1316, 1318 (Fla. 1994) ("stop was not necessarily converted into an arrest because the officer drew his gun and directed Carroll to lie on the ground" before searching him for weapons).

Knox has failed to identify a Supreme Court case that holds detaining an individual at gunpoint and patting him down necessarily constitutes an arrest requiring probable cause. This failure is fatal to his argument that the state courts'

rejection of his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law. *See Marshall*, 828 F.3d at 1285 ("The problem with Marshall's argument is that he cannot show that Supreme Court law at the time held that his seizure went beyond the scope of a *Terry* stop and into the realm of an illegal arrest. Absent such showing, he cannot establish that the DCA's rejection of his *Strickland* claim constituted 'an unreasonable application of, clearly established Federal law.'") (quoting 28 U.S.C. § 2254(d)(1)). Knox, therefore, is not entitled to relief on Ground Three, Four, or Five.

## IV. Conclusion

*Stone v. Powell* precludes the Court from considering Knox's claim in Ground One that the circuit court erred by denying his motion to suppress, and even if it did not, the state courts' denial of relief was neither contrary to established law nor a misapplication of the facts to the law. Similarly, the state courts' denial of Knox's four ineffective assistance of counsel claims was not objectively unreasonable. *See Shinn v. Kayer*, 592 U.S. 111, 118 (2020) ("The prisoner must show that the state court's decision is so obviously wrong that its error lies 'beyond any possibility for fairminded disagreement.'") (quoting *Richter*, 562 U.S. at 103).

### A. Evidentiary Hearing

The undersigned finds that an evidentiary hearing is not warranted. In deciding whether to grant an evidentiary hearing, this Court must consider "whether

such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan,* 550 U.S. 465, 474 (2007). Additionally, this Court must consider the deferential standards prescribed by § 2254. *See id.* Upon consideration, the undersigned finds that the claims in this case can be resolved without an evidentiary hearing. *See id.*

### B. Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Court provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

Accordingly, it is  RECOMMENDED:

1.      That the petition under 28 U.S.C. § 2254, challenging the conviction in *State v. Knox*, Leon County Circuit Court Case No. 2018 CF 763, Doc. 1, be DENIED without an evidentiary hearing.

2.      That a certificate of appealability be DENIED.

3.      That the clerk be directed to close the file.

At Pensacola, Florida, this 20th day of August, 2024.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed **within fourteen (14) days** of the date of the Report and Recommendation.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1.